United States District Court
Middle District of Florida
Jacksonville Division

**SHERRI BRENNEMAN,**

   *Plaintiff,*

v.                                                    **NO. 3:25-cv-401-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

   *Defendant.*

## Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security. Doc. 1. The procedural history, evidence, and law are summarized in the decision, Tr. 10–19, and the briefs, Docs. 18, 20, and not fully repeated here. The pertinent period is April 20, 2022, to December 11, 2024. Tr. 19.

Section 405(g) details the court's review power and limits:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g) for supplemental security income). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). A court may not decide facts anew, make credibility findings, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F. 4th 1315, 1320 (11th Cir. 2021).

The plaintiff argues that the ALJ failed to properly consider the persuasiveness of the opinions of the consultative examining psychologist, Dr. Edd Easton-Hogg. Doc. 18 at 3–10. The Commissioner disagrees. Doc. 20 at 6–12.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how she considered them. *Id.* § 416.920c(a), (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.*

2

§ 416.920c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

The plaintiff alleged disability beginning on January 15, 2021, initially due only to physical impairments. Tr. 237, 280, 332, 349. At the administrative hearing, the plaintiff testified about not liking to be around people. Tr. 50–51. In a letter, the plaintiff described mental impairments, including panic attacks, feelings of anger, and trouble being around others, and the plaintiff disclosed being on probation for felonious assault with a weapon without intent to kill. Tr. 410.

At the Social Security Administration's request, Dr. Easton-Hogg, Psy.D., conducted a consultative examination of the plaintiff. Tr. 1373–77. Dr. Easton-Hogg began his report, "When questioned regarding the nature of her Disability, the claimant reported problems with PTSD, depression, back/spine, breathing[,] and left leg." Tr. 1374.

Dr. Easton-Hogg detailed the background and daily activities that the plaintiff described:

> The claimant was born in Columbus, OH. She was raised by their parents. She had one sibling. He denied having lived in foster care as a child. The claimant reported having not suffered from abuse as a child, but have been in a domestic violence situation.

> Educationally, the claimant finished her GED and some college. She was in special education throughout school.

> Occupationally, the claimant's last employer was for Grand Canyon West as security for about a year. She stopped in 2019 due to being

sexually assaulted at work and family grief. Longest prior employment was for two years with LumberCraft.

The claimant is married and lives with her husband and four children. She had six children. The claimant lives in a trailer that they own.

Medically, the claimant reported problems with back/spine issues, left leg, and breathing. She is under the care of Dr. Ormond. and are prescribed Methocarbine, Anolopro, Gabapentin, Ferrosulfate, Estridol, Loratidine, Potassium, Dycyclomine, Premaprexal, Omeprazole, Carvidilol, and Sertraline. The claimant has not been hospitalized overnight recently.

In the area of mental health, the claimant has taken medication on and off since 2015. She has been on medication consistently for the past three years. She reported anxiety, panic attacks, depression, and stress. Symptoms include: poor sleep, fatigue, low mood, poor stress tolerance, nightmares, nervousness, racing and intrusive thoughts, isolating at home, avoiding others and crowds , history of suicidal ideation, and irritability. She has not been hospitalized for mental health reasons. There is a history of mental illness in the family.

In the area of addictive substances, the claimant reported having a substance abuse history with alcohol. She started drinking around age 13. She was using stimulant drugs for about a year in early adulthood. She has not been in treatment. She reported she has been sober since age 23.

Legally, she has been arrested five times. Her last arrest was in April 2023. Charges have included theft, threatening to kill someone, disorderly conduct, The claimant has spent two nights in jail.

…. The claimant reported getting poor sleep due to pain and nightmares at times. She stated to bathe and brush teeth daily. The claimant stated to eat two times daily. She reported difficulty with house work and yard work, due to breathing and pain issues. The claimant does drive, can manage the use of money, and does go shopping. She is responsible for children daily . For recreation the claimant watches TV. She will visit with family routinely. There are not disabled adults in the home.

Tr. 1374–75 (errors in original).

4

Dr. Easton-Hogg provided notes from a mental status exam:

[The claimant] reported being 5'1" tall and weighing 263 pounds. His clothing was neat and clean and appropriate for age and the occasion. Grooming was normal. Gait was appropriate and motor activity was appropriate.

The claimant's attention to task and concentration appeared fair. She was alert and oriented to the year, month, day and location.

The claimant was able to spell the word "world" backwards. She was able to repeat a series of threes backwards from the number 20. She was able to calculate $1-.17 cents, and could calculate 4x7 and 5+8.

Moderate deficits were noted in memory. She was able to repeat up to a digit series of numbers forward and up to a digit series of numbers in reverse. The claimant was able to report their last meal and what she did over the weekend. She was able to report two of three unrelated words after a ten minute delay.

The claimant's fund of knowledge appeared below average. She was able to name the president, the past president, three large cities, number of weeks in a year and state capitol. The claimant could not name sunset direction(east). Overall intellectual ability was judged to be in the low average range.

Capacity for abstraction was intact. She was able to identify word similarities between boat/car and piano/drum. The claimant was able to interpret "the early bird catches the worm" and "don't cry over spilled milk" accurately.

The claimant's eye contact with the examiner was appropriate. Facial expressions appeared were expressive. Attitude towards the examination was cooperative. The claimant's affect was sad and mood depressed . On a scale of 1 to 10 with 10 being the most symptomatic, the examiner rated the claimant's mood as a 3/10.

The claimant's speech flow was typical. Thought content appeared appropriate to mood and circumstances. She denied having a history of visual or auditory hallucinations. The organization of thought processes appeared logical.

> The claimant's judgment and reality testing appeared adequate. Insight into the nature of difficulties appeared fair. Decision-making skills appeared fair.
>
> The claimant's primary stressors included mental health and physical problems. Coping abilities appeared overwhelmed and poor. Skill deficits included poor decision making ability at times and physical limits. She receives support from family. Social maturity was appropriate. The claimant was identified as being responsible.

Tr. 1375–76 (errors in original).

Dr. Easton-Hogg provided the following diagnostic impression: "Post Traumatic Stress Disorder[;] Major Depressive Disorder, Recurrent, Mild[;] Victim of Sexual Abuse Alcohol[;] Use Disorder, In Remission." Tr. 1376.

Dr. Easton-Hogg opined that the plaintiff has the following functional capacities:

1. The claimant's capacity to understand and remember instructions towards the performance of simple tasks appears affected by symptoms to a moderate degree.

2. Ability to sustain concentration and have persistence to carry out simple instructions appears affected by these impairments to a moderate degree.

3. Capacity to respond appropriately to supervisors, coworkers and the public appears affected by these impairments to a moderate degree.

4. Ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree.

Tr. 1376.

Dr. Easton-Hogg concluded, "If awarded benefits, it is felt that the claimant could manage them adequately in their best interest. The prognosis for their improvement is fair with mental health intervention. In the absence

of treatment, mental health prognosis would likely be poor." Tr. 1376 (numbers omitted).

The day before Dr. Easton-Hogg's examination, during a consultative examination with a family care specialist, Bob Prevatt, PA-C, the plaintiff reported being able to "perform all activities of daily living without difficulty." Tr. 1363. Approximately one week later, at the initial determination level, Robert Hodes, Ph.D., found that the plaintiff could "understand and learn simple[,] routine[,] and semi-skilled work tasks"; "sustain attendance, effort[,] and focus across the workday and workweek in a setting with flexible productivity standards"; "interact in an appropriate and effective manner with the public, coworkers[,] and supervisors"; and "adapt to demands and changes in a work setting [if] changes are introduced in a gradual manner and demands are routine." Tr. 61, 68–69. Four months later, at the reconsideration level, Pamela Green, Ph.D., made the same findings. Tr. 72, 78–81.

In the decision, the ALJ summarized the law on medical opinions and prior administrative medical findings and provided the following analysis:

> The opinions of mental consultative examiner, Edd Easton-Hogg, Psy.D., that the claimant has moderate to marked limitations are not persuasive because they appear to be largely based on the claimant's subjective reporting and are not supported by examination findings or consistent with the claimant's history of treatment (Exhibit 11F [Tr. 1373–77]). She has had minimal mental health treatment and no inpatient hospitalization. The findings of the state agency examiners that the claimant can perform a reduced range of light work are persuasive because they are supported by examination findings and imaging studies and are consistent with treatment notes and evidence of the claimant's functioning (Exhibit 2A [Tr. 61–70], 4A [Tr. 72–81]). However, the undersigned also finds that the claimant can have no exposure to hazards.

Tr. 17.

Elsewhere, the ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and explained the reasons for the finding. Tr. 15–18.

Elsewhere, the ALJ summarized the plaintiff's mental-health history:

> [T]he claimant has also been diagnosed with anxiety disorder and depressive disorder. Treatment notes document minimal treatment of anxiety with Zoloft (Exhibit 7F [Tr. 1224–89], 9F [Tr. 1346–61], 21F [Tr. 1515–48]). Mental status examinations have been consistently normal, and there is no evidence of inpatient or emergency psychiatric treatment. The claimant's mental impairments cause no more than mild to moderate limitations in the areas of mental functioning as reflected in the above residual functional capacity statement. Overall, evidence of the claimant's chronic lower back pain, hernia, obesity, and mental impairments supports finding a limitation to light work with additional postural, environmental, and mental limitations.

Tr. 17.

Elsewhere, the ALJ found that the plaintiff has a mild limitation in the area of "understanding, remembering or applying information," providing this explanation:

> During a mental consultative examination, on November 9, 2023, the claimant reported a history of anxiety, panic attacks, depression, and stress with symptoms including poor sleep, fatigue, low mood, poor stress tolerance, nightmares, nervousness, racing and intrusive thoughts, isolating, avoiding crowds, suicidal ideation, and irritability (Exhibit 11F [Tr. 1373–77]). She reported that she was able to drive, manage money, go shopping, and care for children. Upon examination, the claimant's fund of knowledge appeared below average and overall intellectual ability was in the low average range. She had moderate deficits in memory. The claimant was able to spell

8

"world" backwards, complete serial 3s, and perform simple calculations. The evidence supports no more than a mild limitation in understanding, remembering, or applying information.

Tr. 13.

The ALJ likewise found that the plaintiff has a mild limitation in the area of "interacting with others," providing this explanation:

> The claimant reported a history of isolation, low mood, nervousness, and irritability (Exhibit 11F [Tr. 1373–77]). During the mental consultative examination, the claimant reported that she could go shopping and visited with family routinely. Examination revealed appropriate eye contact, expressive facial expressions, and cooperative attitude. She had a sad affect and depressed mood. The claimant's speech and thought content were normal. The undersigned finds that she has a mild limitation in interacting with others.

Tr. 13.

The ALJ found that the plaintiff has a moderate limitation in the area of "concentrating, persisting or maintaining pace," providing this explanation:

> The claimant complained of low energy, fatigue, poor sleep, and racing thoughts (Exhibit 11F [Tr. 1373–77]). Upon examination, her attention to task and concentration appeared fair. She was able to perform serial 3s and simple calculations. The claimant's thought content and organization of thought processes were normal. She reported that she was able to manage money, shop, and care for children. The claimant has a moderate limitation in concentrating, persisting, or maintaining pace.

Tr. 14.

The ALJ found that the plaintiff has a mild limitation in the area of "adapting or managing oneself," providing this explanation:

> The claimant reported a history of poor stress tolerance, nervousness, and suicidal ideation (Exhibit 11F [Tr. 1373–77]). However, upon

9

> examination her judgment and reality testing appeared adequate, and her insight and decision-making skills were fair. Additionally, treatment notes document minimal history of mental health treatment. The claimant's anxiety has been treated with Zoloft and has been well controlled (Exhibit 7F [Tr. 1224–89], 9F [Tr. 1346–61]). There is no evidence that she has required inpatient or emergency psychiatric treatment, and mental status examinations have consistently been unremarkable. The claimant has no more than a mild limitation in adapting or managing oneself.

Tr. 14.

The ALJ found a residual functional capacity (RFC) that included mental limitations: "The claimant can perform and sustain simple tasks for two-hour periods and can adapt to demands and changes in a work setting where changes are introduced in a gradual manner and demands are routine. She cannot work with the general public and can have occasional interaction with co-workers and supervisors." Tr. 14. As the Commissioner observes, the ALJ thus found that the plaintiff "has some significant, albeit not disabling, mental limitations." *See* Doc. 20 at 9 (quoted).

Contrary to the plaintiff's argument, the ALJ properly considered and explained the persuasiveness of Dr. Easton-Hogg's opinions, as shown in the excerpts above.

The plaintiff argues that the ALJ's reasons for finding Dr. Easton-Hogg's opinions unpersuasive are flawed. Doc. 18 at 6.

Relying on *Meade v. Commissioner of Social Security*, 807 F. App'x 942 (11th Cir. 2020), and *Matthews v. Barnhart*, 347 F. Supp. 2d 1093 (M.D. Ala. 2003), the plaintiff argues that the ALJ's first reason, "the[ opinions] appear to be largely based on the claimant's subjective reporting," is flawed because the Social Security Administration itself required the plaintiff to undergo the

10

evaluation considering that evidence relating to her mental health was lacking, Dr. Easton-Hogg based his opinions and diagnoses on his observations of her and her history and reports, and doctors routinely make diagnoses and treatment plans based in part on patient reports. Doc. 18 at 6–7 (quoting Tr. 17).

In *Meade*, the ALJ gave a psychiatrist's opinion less weight in part because the psychiatrist largely relied on the plaintiff's self-reporting. 807 F. App'x at 949. The Eleventh Circuit held that the ALJ erred in discounting the opinion because the ALJ failed to explain why reliance on the plaintiff's self-reporting undermined the opinion, observing that "one would expect a psychiatric evaluation to largely rely on such testimonial evidence," and the self-reports were corroborated by the record evidence. *Id.* In *Matthews*, the ALJ rejected a psychologist's opinion in part based on the plaintiff's lack of credibility, which the ALJ contended cast doubt on information that the plaintiff gave about his pain. 347 F. Supp. 2d at 1101. The court held that the ALJ substituted his own opinion for that of the psychologist because his justifications for rejecting the opinion were not supported by substantial evidence. *Id.*

The plaintiff's argument is unpersuasive. As the Commissioner observes, the fact that a doctor primarily relied on subjective complaints can be a ground for discounting the doctor's opinion. Doc. 20 at 10–11 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004), and *Nardelli v. Comm'r of Soc. Sec.*, No. 23-11581, 2024 WL 565383, at *5 (11th Cir. Feb. 13, 2024)). Neither *Meade* nor *Matthews* are binding, and neither rely on any statute or regulation barring the consideration of the extent of reliance on subjective statements in determining the persuasive value of medical opinions.

Moreover, the ALJ evaluated the plaintiff's subjective complaints and found that they were inconsistent with the evidence, Tr. 15, and she provided other reasons for finding Dr. Easton-Hogg's opinions unpersuasive.

The plaintiff argues that the ALJ's second reason, "minimal mental health treatment and no inpatient hospitalization," is flawed because the ALJ never asked the plaintiff why treatment and hospitalizations are absent, positing that her treatment through Express Care or hospital visits evidences the possibility that she might not have insurance and might not be able to afford treatment. Doc. 18 at 8 (quoting Tr. 17). The Commissioner persuasively explains why this argument fails:

> [H]er argument misreads the ALJ's analysis. The ALJ observed that the use of Zoloft was the only treatment utilized and that such limited treatment was not consistent with the disabling limitations found by the consultative examiner (Tr. 17). The ALJ did not, as Plaintiff avers, find that greater treatment was warranted or prescribed, but that Plaintiff failed to adhere to those greater treatment recommendations and that such failure somehow undermined Dr. Easton-Hogg's opinion. The minimal, conservative nature of Plaintiff's prescribed course of treatment and its efficacy (e.g., the fact that, with such treatment, routine examinations consistently showed no mental health abnormalities) was a reasonable consideration for discounting the disabling limitations assessed by Dr. Easton-Hogg.

Doc. 20 at 11–12.

The plaintiff argues that the ALJ's only other reason—the opinions "are not supported by examination findings"—without citing any pages in the record, is too unclear for judicial review. Doc. 18 at 9 (quoting Tr. 17). This final argument fails because the reason follows the ALJ's detailed descriptions of examination findings, leaving no question about what the ALJ meant.

In the final sentence, and without citation, the plaintiff summarily argues, "The ALJ fails to consider the persuasiveness of the non-consulting psychologist, Dr. Green[,] who rendered an opinion after reviewing all of the medical evidence in the record." Doc. 18 at 10. By failing to brief this argument, the plaintiff has abandoned it.

In any event, although the ALJ did not refer to Dr. Green by name, she considered the persuasiveness of Dr. Green's opinion:

> The findings of the state agency **examiners** that the claimant can perform a reduced range of light work are persuasive because they are supported by examination findings and imaging studies and are consistent with treatment notes and evidence of the claimant's functioning (Exhibit 2A [Tr. 61–70], 4A [Tr. 72–81]). However, the undersigned also finds that the claimant can have no exposure to hazards.

Tr. 17 (emphasis added). The mental limitations in the RFC are consistent with or more restrictive than Dr. Green's opinions. *Compare*, Tr. 79 (Dr. Green's opinion that the plaintiff could "understand and learn simple[,] routine[,] and semi-skilled work tasks"; "sustain attendance, effort[,] and focus across the workday and workweek in a setting with flexible productivity standards"; "interact in an appropriate and effective manner with the public, coworkers[,] and supervisors"; and "adapt to demands and changes in a work setting [if] changes are introduced in a gradual manner and demands are routine"), *with* Tr. 14 (the mental limitations in the RFC finding: "The claimant can perform and sustain simple tasks for two-hour periods and can adapt to demands and changes in a work setting where changes are introduced in a gradual manner and demands are routine. She cannot work with the general public and can have occasional interaction with co-workers and supervisors.").

The Commissioner's decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Sherri Brenneman and close the file.

**Ordered** in Jacksonville, Florida, on April 9, 2026.

Patricia D. Barksdale
United States Magistrate Judge

14